Leib M. Lerner (CA State Bar No. 227323)
Douglas J. Harris (CA State Bar No. 329946)
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: leib.lerner@alston.com
Email: douglas.harris@alston.com

John R. Worth (012950)
**FORRESTER & WORTH, PLLC**
2800 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 258-2729
Facsimile: (602) 271-4300
Email: JRW@forresterandworth.com

Attorneys for Alamo Drafthouse Cinemas, LLC

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Case No. 2:20-bk-05017-DPC |
| ALAMO CHANDLER, LLC, | Jointly Administered With Case No. 2:20-bk-05020-DPC and Case No. 2:20-bk-05026-DPC |
| ALAMO GILBERT, LLC, | |
| ALAMO TEMPE, LLC, | Chapter 11 Proceedings |
| Debtors. | Adversary Proc. No.: |
| ALAMO DRAFTHOUSE CINEMAS, LLC | **COMPLAINT FOR:** |
| Plaintiff, | **(1) DECLARATORY RELIEF (Covenants Not Discharged Through Plan);** |
| v. | |
| ALAMO CHANDLER, LLC; ALAMO GILBERT, LLC; and ALAMO TEMPE, LLC, | **(2) DECLARATORY RELIEF (Covenants Enforceable); AND** |
| Defendants. | **(3) INJUNCTIVE RELIEF (Debtors Prohibited from Violating Covenants)** |

Plaintiff Alamo Drafthouse Cinemas, LLC ("**ADC**" or "**Plaintiff**") brings this action against Debtor Defendants Alamo Chandler, LLC ("**Chandler**"), Alamo Gilbert, LLC ("**Gilbert**"), Alamo Tempe, LLC ("**Tempe**", and together with Chandler and Gilbert, "**Debtors**" or "**Defendants**"), as follows:

## **PRELIMINARY STATEMENT**

1. ADC requests a determination that the Debtors' obligations under certain noncompetition covenants are not dischargeable by Debtors' Plan, a declaratory judgment that the covenants are enforceable, and injunctive relief for the covenants to be enforced regardless of whether Debtors' Plan is confirmed. The 2-year post-term noncompetition covenants ("**Covenants**") are material provisions of each of the three franchise agreements ("**Franchise Agreements**") to which ADC is a party with the respective Debtors. The Debtors' Second Amended Joint Plan of Reorganization Dated March 10, 2021 [Doc. 184] ("**Plan**") provides for the rejection of the Franchise Agreements so that the Debtors can operate three competing theaters, contrary to the terms of the Covenants and applicable law.

2. ADC is an innovative movie theater circuit famous for its unique blend of scratch-made food and beverage offerings combined with a unique movie-goer experience. Craig Paschich ("**C. Paschich**") worked for ADC for seven years, progressively moving up the ranks until becoming the head of ADC's franchise division. Then, C. Paschich transitioned from working *for* ADC as a C-level executive developing franchisees, to working *with* ADC as a developer on the franchisee side. C. Paschich, along with his wife, Kimberley Paschich ("**K. Paschich**"), formed Paschich Alamo Holdings, LLC ("**PAH**"), and entered into a Development Agreement dated April 29, 2015 ("**Development Agreement**") with ADC that provided for PAH, C. Paschich and K. Paschich to exclusively develop Alamo Drafthouse Cinema flagged theaters in the State of Arizona. In furtherance of the Development Agreement, PAH, C. Paschich and K. Paschich formed the Debtors as three affiliated franchisees to enter into the individual Franchise Agreements with ADC. The Franchise Agreements prohibit the Debtors from attempting to divert any business from ADC or to operate a competing cinema theater. The Debtors are taking steps in their bankruptcy cases

and Plan to ignore the Covenants and to instead promote and develop a competing brand of theaters after rejecting the Franchise Agreements through their Plan.

**PARTIES**

3. Plaintiff ADC is a Texas limited liability company with a principal place of business at 3908 Avenue B, Austin, TX 78751. Plaintiff's sole member is Alamo Drafthouse Cinemas Holdings, LLC, a Delaware limited liability company, none of whose members are citizens of Arizona or have a principal place of business in Arizona.

4. Defendants Chandler, Gilbert, and Tempe are Arizona limited liability companies with a principal place of business at 519 E Horseshoe Pl., Chandler, AZ 85249. PAH is the controlling equity holder of the Debtors. PAH, in turn, is owned and managed by C. Paschich and his wife, K. Paschich.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a) & (b)(1), because this proceeding relates to the jointly administered bankruptcy cases styled *In re Alamo Chandler, LLC*, Case No. 2:20-bk-05017-DPC (Chapter 11) (Lead Case), *In re Alamo Gilbert, LLC*, Case No. 2:20-bk-05020-DPC, and *In re Alamo Tempe*, LLC, Case No. 2:20-bk-05026-DPC (collectively, the "**Bankruptcy Cases**"). This proceeding is properly brought as an adversary proceeding pursuant to FRBP 7001(7) & (9).

6. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (J), (L), (M), (N) and (O), as it affect and relates to the determination that the obligations under the Covenants are not discharged by the Plan, that the Covenants are enforceable and that injunctive relief should be granted to ADC to enforce the Covenants despite the confirmation of any plan by Debtors. The Court may determine that the Debtors' Plan is not feasible if Plaintiff's requested relief is granted.

7. Venue is proper in the District of Arizona because the Bankruptcy Cases are pending in this District.

8. Pursuant to FRBP 7008, Plaintiff consents to entry of a final order or judgment in this proceeding by the Bankruptcy Court.

# CHOICE OF LAW

9. To the extent that the Court must look to state law to determine the enforceability of the Covenants, Texas law should be applied because Section 18.8 of each of the Franchise Agreements establishes that Texas law shall be applied when interpreting and enforcing the Franchise Agreements.

# FACTUAL BACKGROUND

### A. Alamo Drafthouse Cinema

10. ADC is a cinema theater chain originally founded in 1997 by Tim and Karrie League in Austin, Texas. For over 24 years, ADC has been a leading movie theater circuit for its unique blend of scratch-made food and beverage offerings combined with a unique movie-goer experience. ADC operates corporate owned locations, and also licenses franchised locations to independent franchisees. The brand has received positive press nationally for its unique form of experiential entertainment and has earned an exceptional Net Promotor Score (or "**NPS**")—a leading customer satisfaction measurement system—relative to theater circuits in competitive markets and other well-respected consumer brands.

### B. Craig Paschich's Personal History with ADC

11. From 1999 to 2008, C. Paschich was an executive in restaurant operations with Brinker International where he worked with the Carino's Italian casual dining chain. Carino's Italian employed the franchising model to grow its footprint.

12. After working for Carino's Italian, C. Paschich was hired into a corporate operations position at ADC in 2008. During his tenure at ADC, C. Paschich became an expert in the franchising and management of the ADC brand.

13. Over the course of time, C. Paschich served in the following executive management positions at ADC:

- Vice President of Operations, February 2008 to January 2010;
- Chief Operating Officer, January 2010 to May 2010;
- Chief Development Officer, May 2010 to December 2011; and
- Franchisor Divisional President, December 2011 to March 13, 2015.

14. In early 2015, C. Paschich transitioned from working on the franchisor side to

developing ADC franchises for himself and other investors through his PAH vehicle. PAH is a holding company owned and managed by C. Paschich and K. Paschich.

**C. The Development Agreement**

15. On April 29, 2015, PAH entered into the Development Agreement with ADC and was granted the state of Arizona as a protected territory in exchange for an initial fee, agreed upon unit development schedule and noncompetition covenants for the specialized training he and his constituents would receive to exclusively develop and operate ADC franchises in Arizona. Specifically, the Development Agreement entitles PAH (defined therein as "Developer") "to obtain Franchise Agreements for the establishment and operation of Venues within the Territory." Development Agreement, §1.2. "Venues" are defined as "theater/restaurant venues that feature first run movies with in-theater food and beverage service" and "Territory" is defined as "[t]he State of Arizona." ADC has performed under the Development Agreement by refraining from developing corporate owned theaters and prohibiting any franchisees not affiliated with PAH from developing any ADC theaters in the state of Arizona.

16. The Development Agreement also contains in-term and 2-year post-term noncompetition covenants that prohibit PAH, C. Paschich and K. Paschich (defined therein as Controlling Principals) from, among other things, attempting to divert any business of the customer to any competitor and from operating a "business of a character and concept similar to the Venue, including a cinema eatery." Development Agreement, §§8.2(a)-(b).

17. Moreover, C. Paschich and K. Paschich are parties to the Development Agreement because "all acknowledgments, promises, covenants, agreements and obligations made or undertaken by Developer in this Agreement shall be deemed, jointly and severally, undertaken by all of the Controlling Principals." Development Agreement, §10.14.

**D. The Franchise Agreements**

18. In furtherance of the Development Agreement, PAH formed three affiliates, Debtors Alamo, Gilbert, and Tempe, which entered into the three separate Franchise Agreements with ADC.

19. ADC, as franchisor, and Debtor Chandler, as franchisee, are parties to that certain Alamo Drafthouse Cinemas, LLC Franchise Agreement dated April 29, 2015 ("**Chandler Franchise Agreement**") pursuant to which Chandler operates an Alamo Drafthouse Cinema ("**Chandler Theater**"). A true and correct copy of the Chandler Franchise Agreement is attached to this Complaint as **Exhibit 1**.

20. ADC, as franchisor, and Debtor Gilbert, as franchisee, are parties to that certain Alamo Drafthouse Cinemas, LLC Franchise Agreement dated December 17, 2018 Cinema ("**Gilbert Franchise Agreement**") pursuant to which Gilbert operates an Alamo Drafthouse Cinema ("**Gilbert Theater**"). A true and correct copy of the Gilbert Franchise Agreement is attached to this Complaint as **Exhibit 2**.

21. ADC, as franchisor, and Debtor Tempe, as franchisee, are parties to that certain Alamo Drafthouse Cinemas, LLC Franchise Agreement dated August 1, 2017 ("**Tempe Franchise Agreement**" and together with Chandler Franchise Agreement and Gilbert Franchise Agreement, "**Franchise Agreements**") pursuant to which Tempe operates an Alamo Drafthouse Cinema ("**Tempe Theater**" and together with Chandler Theater and Gilbert Theater, "**Theaters**"). A true and correct copy of the Tempe Franchise Agreement is attached to this Complaint as **Exhibit 3**.

22. Each of the Franchise Agreements includes in-term noncompetition covenants, which provide that the Debtors and Controlling Principals C. Paschich and K. Paschich shall not "directly or indirectly, for themselves, or through, on behalf of or in conjunction with any person or entity:[1]

   i. Divert, or attempt to divert, any business or customer of the franchised business to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks and the System.

   ii. Own, maintain, operate, engage in, or have any financial or beneficial interest in (including any interest in a legal entity), advise, assist or make

---

[1] All quotations of the Franchise Agreements throughout this Complaint are from the Chandler Franchise Agreement; all three of the Franchise Agreements have substantially similar language.

loans to, any business located within the United States, its territories or commonwealths, or any other country, province, state or geographic area in which Franchisor has used, sought registration of or registered the same or similar Marks or operates or licenses others to operate a business under the same or similar Marks, which business is of a character and concept similar to the Venue, including a cinema eatery."

23. Each of the Franchise Agreements also includes **2-year** post-term Covenants which, in pertinent part, prohibit each franchisee to:

> i. [d]ivert, or attempt to divert, any business or customer of the business described hereunder to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Marks and the System.
>
> ***
>
> iii. [o]wn, maintain, operate, engage in, or have any financial beneficial interest in (including any interest in a legal entity), advise, assist or make loans to, any movie theater business or other business that combines a movie theater and a restaurant or bar and that is a character and general concept similar to a Venue, which business is, or is intended to be, located within the Designated Area or within a fifty (50)-mile radius of the location of any Venue in existence or under construction at any given time during such period.

Franchise Agreements, §10.3(b). The Covenants become effective "upon the expiration, termination of, or transfer of all of Franchisee's interest in, this Agreement (or, with respect to each of the Controlling Principals, commencing upon the earlier of: (1) the expiration, termination of, or transfer of all of Franchisee's interest in, this Agreement or (2) the time such individual or entity ceases to satisfy the definition of 'Controlling Principals' as described in Section 18.17) . . .". *Id.*; *see also id.* at §17.8 (also stating that the Debtors, C. Paschich and K. Paschich shall comply with the Covenants upon termination or expiration of the Franchise Agreement). "Venues", as referenced in the Covenants, are defined as "theater/restaurant venues that feature first run movies with in-theater food and beverage service[.]" Franchise Agreements, Recitals.

24. Under the Franchise Agreements, the "Franchisee[s] and the Controlling Principals acknowledge that a violation of the terms of this Article would result in irreparable injury to Franchisor for which no adequate remedy at law may be available, and Franchisee

and the Controlling Principals accordingly consent to the issuance of an injunction prohibiting any conduct by Franchisee or the Controlling Principals in violation of the terms of this Article." Franchise Agreements, §10.4.

**E. Debtors' Anticipated Rejection of the Franchise Agreements and Proposed Operation of Competing Cinema Eateries Will Violate the Covenants**

*i. Debtors Intend to Reject the Franchise Agreements*

25. On October 6, 2020, the Debtors filed their Joint Plan of Reorganization [Doc. 141] ("**Initial Plan**"), which proposed to reject the Franchise Agreements and "enter[] into a partnership with another cinema company . . . ." Joint Plan of Reorganization [Doc. 141] at §VII.D. The Initial Plan is clear that the Franchisees will reject their agreements with ADC and instead intend to run competing movie theater businesses at the same locations where the current Chandler, Gilbert, and Tempe Theaters reside. *See*, *e.g.*, Plan, §VII. This violates the individual Franchise Agreements as well as the Development Agreement. ADC timely filed an objection to the Initial Plan [Doc. 165] based in part upon the individual Debtors violating the noncompete clauses in their respective Franchise Agreements, and the Debtors did not move forward.

26. On March 1, 2021, the Debtors filed their First Amended Joint Plan of Reorganization [Doc. 180] ("**First Amended Plan**"), which again proposed to reject the Franchise Agreements and "enter[] into a partnership with another cinema company . . . ." First Amended Plan §VII.D.

27. On March 10, 2021, the Debtors filed the Plan, which includes a similar proposal: "Upon confirmation of the Plan, if not accomplished sooner by a separate order of the Court, the pre-petition Franchise Agreements shall be rejected. . . . The Debtors believe that rejection of the Franchise Agreements, and the entry into a partnership with another cinema company, will have a significant and positive net effect on the Debtors' cash flow." Plan, §VII.D. The Plan further provides that PAH will transfer a portion of its Allowed Interest in each Debtor to the Chandler Hold Co., Tempe Hold Co., and Gilbert Hold Co. (collectively, the "**Hold Cos.**"). Plan, §VI.F. These are companies formed to hold the majority interest in

the Reorganized Debtors. Plan, §1 (definitions of Chandler Hold Co., Tempe Hold Co., and Gilbert Hold Co.). C. Paschich, acting individually or through an entity, will continue to provide operational and oversight services to the Reorganized Debtors. Plan, §VII.F. ADC is filing an objection to the Plan in conjunction with the commencement of this adversary proceeding.

### ii. *Debtors' Plan Projections Indicate Reorganized Debtors' Cinema Eatery is an ADC Competitor*

28. The Debtors' projections in the Plan's attached exhibits show that Gilbert Hold Co. (Exhibit A), Tempe Hold Co. (Exhibit B), and Chandler Hold. Co. (Exhibit C) intend to operate a cinema eatery at the current premises of the Theaters that will compete with ADC.

29. In addition to typical expenses and revenue associated with operating a movie theater (i.e., box office receipts, film rental costs, projector usage fees), the Reorganized Debtors list certain items associated with operating a full kitchen and bar—two crucial features that differentiate ADC theaters from typical theaters that solely offer movies, prepackaged food, and limited non-alcoholic beverage options. For instance, the projections list sales for food, dessert, bottled beer, wine, and liquor. Plan at 37 (Exhibit A), 46 (Exhibit B), & 55 (Exhibit C). Moreover, the projections list costs associated with creating scratch made food and serving that food to the theater patrons, such as cost of goods sold for dairy, meats, seafood, poultry, produce, bakery, grocery, paper, desserts and payroll for server/waiters, bar, runners, trainers, trainees, kitchen, and expo. Plan at 37 -38 (Exhibit A), 46-47 (Exhibit B), & 55-56 (Exhibit C).

30. Finally, the projections have a line item for a CW operating profit bonus and CW fee, indicating that Cinemaworld of Florida, Inc. ("**Cinemaworld**") is the cinema company that the Debtors intend to be partners with. Plan at 39 & 43 (Exhibit A), 48 & 52 (Exhibit B), 57 & 61 (Exhibit C); Plan at §VII.D (proposing "the entry into a partnership with another cinema company"). Cinemaworld is a competitor of ADC. Cinemaworld operates entertainment destinations centered around movie theaters, food and liquor, under the names CW Theaters and Majestic. CW Theaters and Majestic feature first-run films rather than

classic or independent films. For example, the website for the CW Theater in Lincoln, RI features showtimes for the newest movies out in April 2021, such as "Godzilla vs. Kong" and "The Unholy". This same theater advertises a "Full Bar" with a "Rotating Draft Beer Selection," "Wine & Hard Beverages" and "CW Signature Cocktails." Furthermore, a majority of the food items on the CW menu are also offered at ADC theaters, including chicken tenders, fried pickles, hot wings, pretzels, mozzarella sticks, pizzas, and chicken sandwiches.

### iii. Debtors Intend to Enter into a Competing Partnership with Cinemaworld

31. In response to document requests discovery propounded by ADC to the Debtors, the Debtors produced several documents that confirm the Debtors' business relationship with Cinemaworld and its owner, Rick Starr.

32. On May 27, 2020—more than two months before the Debtors filed their initial Plan on October 6, 2020—PAH entered into a Mutual Confidentiality and Non-Disclosure Agreement ("**NDA**") with Cinemaworld and CW Theaters. The NDA prohibits the parties thereto from using the other's Confidential Information (as defined therein) for any purpose other than "all meetings and communications . . . relating to the Alamo Drafthouse Cinema project . . . ." (emphasis in original). The NDA was neither listed on Debtors' Schedules nor disclosed to the Court or creditors prior to Debtors' response to ADC's discovery requests.

33. On or around October 1, 2020, Rick Starr sent to C. Paschich a proposal deck for "Alamo West Arizona Tempe, Gilbert Chandler Proposal for management, operation, and rebrand", presenting a plan to rebrand, manage and operate the three Theaters under a non-Alamo brand. The deck essentially proposes replacing ADC's branding, signage, management, and accounting rather than significantly altering ADC's unique business model of serving craft made food and alcoholic beverages to its patrons.

34. On October 30, 2020, C. Paschich and Cinemaworld executed a Letter of Intent ("**Letter of Intent**") that provides for the "proposal for management and future acquisition of three theater locations in Tempe, Chandler and Gilbert, Arizona." The Letter of Intent's proposed services include a 3-year license of the CW and Majestic brands for the three properties, having C. Paschich overseeing day to day operations, and having an option to

purchase the operating company and real estate in Tempe and Gilbert after 1 year of management. The Letter of Intent was neither listed on Debtors' Schedules nor disclosed to the Court or creditors prior to Debtors' response to ADC's discovery requests.

35. On December 30, 2020, C. Paschich emailed ADC senior executives Tim League and Dave Kennedy to confirm that he has "decided to reject the franchise agreement and change the brand to see if we can achieve fiscal success in Arizona" as "changing the business is the *only* way for me to take care of my family and investors." (emphasis added). In the email, C. Paschich also provided a business plan containing a list of ten items that will "ensure the long-term success of this company" as a non-ADC entity, including but not limited to PAH "giv[ing] up controlling interest in all three companies to Ernest [Cunningham] and his team[,]" "de-identify[ing] the buildings by taking down all signage and logos[,]" "eliminat[ing] the preshow and incorporate on-screen ads and trivia[,]" and "chang[ing] the tap wall and focus[ing] on domestics and local and get[ting] rid of all bottles[.]"

## COUNT I

**(Declaratory relief that the Covenants in the Franchise Agreements cannot be discharged through the Debtors' Plan)**

36. ADC incorporates the allegations in the paragraphs above as if set forth fully herein.

37. The Debtors' Plan proposes that upon confirmation, or sooner by a separate order of the Court, the pre-petition Franchise Agreements shall be rejected, and that upon Plan confirmation Debtors will enter into a partnership with another cinema company to compete against ADC in violation of the Covenants.

38. The Debtors' violations of the Covenants cannot be reduced to a monetary claim that can be discharged through a bankruptcy Plan.

39. A genuine, justiciable controversy exists between the parties regarding whether the Covenants can be discharged by the Plan. ADC seeks a declaratory judgment that the Covenants in the Franchise Agreement cannot be discharged by the Plan.

## COUNT II

**(Declaratory relief that the Covenants in the Franchise Agreements are enforceable)**

40. ADC incorporates the allegations in the paragraphs above as if set forth fully herein.

41. The Franchise Agreements conveyed to Debtors a variety of rights to use the marks and goodwill of ADC, which included the specialized training Debtors received to exclusively develop and operate ADC franchises in Arizona, and exposed Debtors to ADC's confidential business information. As a material condition of the Franchise Agreements and in consideration of those substantial benefits, as part of complex and sophisticated business transactions, the Debtors assented to the terms of the Franchise Agreements, the Covenants contained therein, and the Texas choice of law provisions.

42. Debtors, its parent company PAH, and its principals C. Paschich and K. Paschich are experienced and sophisticated business parties.

43. Debtors entered into the Franchise Agreements knowingly and of their own free will.

44. The Franchise Agreements, including the Covenants contained therein, are valid and enforceable contracts between ADC and the Debtors.

45. The Covenants in the Franchise Agreements prohibit the Debtors and its Controlling Principals, C. Paschich and K. Paschich, from any "attempt to divert, any business or customer of the franchised business hereunder to any competitor" and the Debtors may not "[o]wn, maintain, operate, engage in, or have any financial or beneficial interest in (including any interest in a legal entity), advise, assist or make loans to, any business that is of a character and concept similar to the Venue, including a cinema eatery, which business is, or is intended to be, located within the Designated Area or within a fifty (50)-mile radius of the location of any Venue in existence or under construction at any given time during such period." Franchise Agreements, §§10.3(b)(i) & (iii).

46. The Covenants are reasonable in scope and duration and are necessary to protect the goodwill and confidential information belonging to ADC. The Debtors are required by the

Franchise Agreements to comply with the Covenants after the rejection or termination of the Franchise Agreements.

47. ADC has fully and properly performed and fulfilled all of its obligations under the Franchise Agreements, including granting the Defendants an exclusive right to develop Alamo Drafthouse Cinema theaters in the State of Arizona, and/or was excused from their performance.

48. A genuine, justiciable controversy exists between the parties regarding Defendants' obligation to abide by the Covenants. ADC seeks a declaratory judgment that the Covenants in the Franchise Agreements are enforceable after the rejection or termination of the Franchise Agreements.

## COUNT III

### (Injunctive Relief)

49. ADC incorporates the allegations in the paragraphs above as if set forth fully herein.

50. Section 10.4 of the Franchise Agreements sets forth the mutual agreement of the parties that a breach of the Covenants "would result in irreparable injury to Franchisor for which no adequate remedy at law may be available, and Franchisee and the Controlling Principals accordingly consent to the issuance of an injunction prohibiting any conduct by Franchisee or the Controlling Principals in violation of the terms of this Article." Franchise Agreements, §10.4.

51. Debtors have stated their intention to enter into a partnership with another cinema company and have taken steps to effectuate that plan including PAH entering into the NDA, executing the Letter of Intent, and/or C. Paschich sending the email correspondence to ADC executives declaring that the three Theaters are changing from being Alamo Drafthouse Cinema theaters and outlining that business plan, and proposing the Plan that requires Debtors to compete with ADC post-confirmation. Such acts would violate the Covenants in the Franchise Agreements and cause ADC irreparable harm including but not limited to loss of goodwill, confidential and proprietary marketing and business plans.

52. There is no adequate remedy at law because damages cannot be measured for the Debtors' violation of the noncompetition covenants and the injury is irreparable. The Franchise Agreements were entered into in conjunction with the Development Agreement, whereby ADC granted the state of Arizona as a protected territory to PAH, the parent company of the Debtors. Accordingly, ADC contracted away its right to develop any other ADC Theater in Arizona with any franchisee, except for PAH and its subsidiaries. Here, the Debtors are attempting to close the current Debtor Theaters under the ADC flag and instead offer the same product and unique movie goer experience under a competitor flag. Furthermore, the Franchise Agreements do not include any liquidated damages clause. Therefore, this violation of the noncompetition covenants will cause irreparable damage to ADC's brand in Phoenix and the State of Arizona, and monetary damages are not an alternative relief available to ADC.

53. Injunctive relief is warranted upon consideration of the balance of the hardships between ADC and the Debtors because Debtors will not have to expend any money to comply with the Covenants or with an injunction issued by this Court enforcing the Covenants. Debtors will simply have to refrain from engaging in the prohibited competition for the requisite period of time. ADC, on the other hand, would be required to find new franchisees willing to compete with the Debtors, or spend significant capital to develop company owned venues, after abiding by the limitations of the Development Agreement and Franchise Agreements for the benefit of Debtors for many years.

54. Enjoining Debtors from violating the Covenants is in the public interest and will not harm the public interest.

55. For the foregoing reasons, and because the Franchise Agreements provide for injunctive relief, ADC requests a permanent injunction prohibiting Debtors from violating the terms of the Covenants.

**WHEREFORE**, ADC respectfully requests an order and judgment of this Court as follows:

    a. On Count I, declaring that the Covenants in the Franchise Agreements are not discharged by the Plan.

b. On Count II, declaring that the Covenants in the Franchise Agreements are valid and in full force and effect after the rejection and/or termination of the Franchise Agreements.

c. On Count III, a permanent injunction enjoining the Debtors and their agents, servants, and employees, and all persons acting under, in concert with, or for them from violating the Covenants in the Franchise Agreements.

d. For costs of suit incurred herein.

e. Awarding ADC such other and further relief as this Court deems just and proper.

DATED: April 19, 2021  **FORRESTER & WORTH, PLLC**

/s/ John R. Worth
John R. Worth (012950)
Attorneys for Alamo Drafthouse Cinemas, LLC